Your argument next in Case 22-500, Great Lakes Insurance v. Raiders Retreat Realty. Mr. Wall. Mr. Chief Justice, and may it please the Court, In the Bremen and Carnival, this Court held that forum selection clauses in maritime contracts are enforceable as a matter of federal law, except in the rare circumstances when they violate federal maritime policy. Almost all federal courts, including all of the major maritime courts, have taken the same approach for choice of law clauses. This Court should do the same for three reasons. First, logic and consistency. We're here talking about a federal exception to a federal presumption of enforceability. It stands to reason that federal exception would look to federal public policy, not state public policy. Raiders doesn't point to any analogous federal exception that looks to state public policy, and it doesn't explain why choice of law in maritime should be any different from forum selection in maritime. Second, the consensus approach makes practical sense for the reasons that this Court gave in the Bremen. Judging choice of law clauses by reference to a uniform body of federal law accords with ancient concepts of freedom of contract, and it allows parties to gauge and price their risks, knowing what law will apply to their contracts. If 50 states may set aside parties' choices based on their own public policies, that would be a reference for uncertainty and forum shopping. Third, the consensus approach is clear and administrable. On our approach, a federal court would ask, does a choice of law clause offend federal admiralty policy? The answer to that question will almost always be no. On Raiders' approach, the court would ask, what's the state with the greatest interest in the dispute? Does that state have a public policy with respect to the specific question at issue, and is that public policy fundamental? So, for instance, you could have a Florida District Court asking whether Pennsylvania has a fundamental public policy sufficient to overcome the application of New York law. The answer to that will almost always be hazy, and that lack of clarity would disserve the admiralty world and federal courts. I welcome the Court's questions. Mr. Wall, what effect does Wilburn Boat have on your argument? So, I think you have to take Wilburn Boat as part of the background law. Wilburn Boat was a watershed decision, to be sure, and said, state law occupies the space when there is no well-established rule of admiralty or no need to create one. But this Court saw no tension with Wilburn Boat in the Bremen or Carnival, where it said either there's a well-recognized rule of admiralty or we think we need to create one, whichever one the Court was doing, when it said forum selection clauses are generally enforceable as a matter of federal law. So I see no tension between those two things. The question just remains, there was, the Court in the Bremen perceived, either a recognized rule of admiralty for forum selection or a need to create one. And so the only question here is, should we have the same rule for choice of law clauses? I can't think of a single good reason why you would distinguish between the two. If anything, I would think it would be easier on the choice of law side, because the forum selection question can really affect the party's practical ability to litigate. The choice of law question is just once you reach the forum, what law will the parties apply? It is worth noting, though, that it's not as if Great Lakes picked out here South Dakota law or Mongolian law. When they picked out New York law, that's a common choice among both marine insurers generally and surface lines insurers. We agree with you that there's a federal presumption and that federal law defines the content of the exception. So assume, just for the question, that. What then is the content of the federal exception? I think the briefs kind of dance around with a few different formulations. First of all, the restatement. Is that relevant? Particularly restatement 187.2b, I think you think that's out altogether, I think. So I don't think that's right, Justice Kavanaugh. Just take a step back. I think the Bremen did this exactly right. So if it's narrow decision day, I mean, I think it's just the Third Circuit kind of got one little piece of the Bremen wrong. The Bremen said. Well, assume it's not, that we're trying to figure this out. I'm good with first principles. So the Bremen says, look, is there fraud in the formation of the contract? Is there a formation problem? Set that to the side. No formation problem. Now, generally enforceable unless unreasonable or unjust. And what does that mean? And the Bremen says, citing the parallel section of the restatement for foreign selection, says two things. One, if it's contrary to public policy. And two, it says maybe if there's no substantial connection to the chosen law or no reasonable basis for choosing that law. I think the Court of Appeals got all that right. So the Marine Underwriters amicus brief, which supports you, but says that's no good, the substantial connection point, because they say that oftentimes sophisticated parties in this context are going to choose a neutral form to which neither might have a substantial connection. So I just want to make sure, and they seem more generally to be, don't do the restatement, don't just do the point you made about if the state law offends federal admiralty policy, then okay. But otherwise, don't do the restatement. That seems to be their position. I want to make sure you're clear on that. I think it's a little more nuanced than that, Justice Kavanaugh. What the Bremen says and what the restatement says and that prong is, and the Bremen cites this, I think, faithfully. It says no substantial connection or no reasonable basis. And what the Marine Underwriters say is some courts in picking that up have just done the substantial connection and not looked to the reasonable basis. As long as you say that even if you're not connected to New York, though the parties were here, that that's a perfectly reasonable law for sophisticated parties to pick in maritime or, frankly, out of maritime. And it's for a reasonable basis. It's for a reasonable basis. Just pick up last week. It's not an reasonable basis. That's right. And the Bremen got all this right. I mean, the only place where the court of appeals went wrong was it said, OK, public policy can be one of the things that makes it unreasonable and just. Whose public policy? We look to the state, which isn't what the Bremen did. And it doesn't make a lot of sense. If you think there's a presumption of enforceability, then federal law cares about generally having them enforced. When would they not want that to be true? Well, when it deserves the purposes of maritime, not when it deserves one of a 50 states idiosyncratic public policy. Except that's where you get to Justice Thomas's view of asking you about Wilburn, because Wilburn seemed to say something different. Wilburn seemed to say, you know, even when you're trying to figure out what the federal law should be in this area, the federal law often says, well, the states have an extremely important role to play. And so it should be a state rule of decision. That's a federal rule that it should be a state rule of decision. That's essentially what Wilburn said in the insurance, maritime insurance context. And most of your brief seems to be an effort to run away from that aspect of Wilburn, repeated over and over and over again, which is when it comes to maritime insurance, states have long regulated the area and strongly regulated the area. And the federal rule is that we should allow that to continue. So two things, Justice Kagan. I understand that argument, and I think it has more force on the sort of new frontline position. But if the court's accepting that on the narrow question, granted, there is a federal presumption of enforceability, and we're just trying to figure out how to work the exception, then I think we sort of already passed Wilburn. But because we have now a well-established federal rule, it's a presumption of enforceability. And we're just trying to figure out what did the Bremen mean when it said public policy? What does the restatement mean? We're sort of past Wilburn Boat. I take the point more generally. I don't really think so in anything other than a highly technical way. What Wilburn Boat said is that in crafting the exceptions to this presumption, you should take into account that states have long regulated maritime insurance and that they should continue to do so. So I don't think that's quite right, Justice Kagan. It doesn't say anything about sort of how you work federal rules once you have them in admiralty. It says if you have a rule in admiralty, you follow it, or if you need to create one. And we can debate whether the Bremen was recognizing an acknowledged rule or creating one. I think it's possible to read the decision either way. And then Wilburn Boat tells you if you don't have the federal rule or a need to create a uniform rule in order to serve the purposes of admiralty, state law does all the work there. You're right. There's a lot of other sort of language in DICTA about the historical role that states have played with regard to regulating marine insurance. And I'm not sort of here dickering with any of that except to say the Bremen and Carnival didn't see any of that as a barrier to recognizing or creating a uniform federal rule for forum selection. I don't take the other side to be disputing that or saying those decisions should be overruled. And so the question just is, all right, we have that rule in admiralty, which applies to forum selection clauses across the board, all maritime contracts. It doesn't matter whether they're marine insurance or not. Should we have the same system for a choice of law clause when those clauses typically travel together in maritime contracts like this one? And I don't really think Wilburn Boat has much to say on that question. Your argument, I take it, is that there is an established federal maritime rule, not simply on choice of law provisions, but I don't know, the Uber, MI, FIDE doctrine? In other words, that even if your boat runs aground, you know, if you didn't have the fire extinguisher, you know, updated, you lose. What if there weren't an established maritime policy on that specific doctrine? So a couple of things, Mr. Chief Justice. I don't know that Uber, MI, FIDE is the sort of rule that's triggered here as much as strict enforcement of the warranties. It is true that post-Wilburn Boat, some of those like Uber, MI, FIDE or navigational limits, courts have almost uniformly said are controlled by federal law because they were well-established rules in admiralty. Some of the others, like named operator or fire extinguisher, they've left to state law. That's the substantive state law. So it is true that post-Wilburn Boat, federal law is going to control some of the contractual provisions. State law will control others. But I don't think it makes any difference to our argument, which is that the question here is about the enforceability of a choice of law clause, and on that, there is a well-established rule. I was just going to say, sorry to interrupt, but I mean, certainly the argument can be made, and I think it's the argument of your friend on the other side, that Wilburn Boat is expressly designed to do what you indicated that it doesn't matter, which is if you have a very particular question, like how the insurance policy should be interpreted, and there's no federal rule. There's a general federal rule about choice of law, but not the particular question there. And on that question, under Wilburn Boat, you do look to state law. I agree with that, Mr. Justice. On the breach of the fire extinguisher warranty and policy, that's going to go to state law. The question is, which state law do we give effect to the choice of law clause? And there is a rule on choice of law clauses in admiralty, and it's as well-established as it can be, absent a pronouncement from this court. It goes back to London Assurance in Kensington in 1897 and 1902. Then you find this court saying it for foreign selection in Bremen and Carnival. Then you have virtually every federal court, including the Fifth and the Ninth Circuits and all the major maritime district courts, adopting it for choice of law. It is as well-established in admiralty as it can be, absent a decision of this court. Did raters concede that below? I mean, it kind of seems that the way this case was litigated is that everyone assumed and kind of took as a given that there was this well-established federal rule that choice of law clauses were presumptively enforceable, and it has changed its position now. But below, am I right that raters took that as a given? Yes. But it's not just about raters, Justice Barrett. It's just a reflection of the way these cases are litigated. Everyone for decades has taken it as a given that the Bremen applies with respect to foreign selection and choice of law. And everybody had been thinking federal public policy, and then they made the argument about state public policy, and in our view, the Third Circuit got that wrong. But everybody had been doing this within the framework of the Bremen just for maritime contracts, for foreign selection, for choice of law. And so everybody thought there was a federal presumption across the board, and then it was just, what are the exceptions to the presumption? And, Mr. Wall, there's a wonderful line in your brief. Now, this is a case about a yacht that ran aground, and when the claim is filed, your client denies the claim because you say they didn't do what they were supposed to do regarding fire extinguishers, but there was no fire. The absence of fire extinguishers up to your standards had nothing whatsoever to do with this. So you have this law, and so to deny coverage on that ground does seem harsh. But you say, although that denial may seem harsh to the land-bound, it reflects traditional maritime principles. Now, if I were not land-bound, suppose I spent a lot of time sailing around the world on ships. It wouldn't seem harsh to me anymore? It would not if you were a member of the admiralty bar, as I've come to understand. Justice Alito, I've always been worried about this because it struck me as harsh, too, when I approached the case. There is a different tradition that grew up around the admiralty system and Lloyds of London. I know there are a lot of things about old-time maritime law that are very harsh. We had a case a few years ago about maintenance and cure of semen, and we had a case involving a sailor who got a fractured skull shortly after leaving port, and then the captain made the entire journey and refused to put the person ashore at any port to get medical treatment and waited until the person came home. And no punitive damages. But the reason for this, Justice Alito, is that you had international insurers located overseas who had no way of monitoring these vessels or incentivizing compliance. And so this tradition grew up, and it's very different from what we think of a car insurance or home insurance, where you pay your premiums and they process the claims in the pool. These are sort of specialized policies. And so just to put a little finer point on it, Great Lakes has a surplus lines insurer. I didn't know what that was before, but it turns out you go to them when your other insurers won't take you. So you can't get your boat policy from Progressive or GEICO. Maybe you're risky. Maybe, as here, the boat is very expensive. You want a big policy. So it's a unique transaction that others in the market don't do. There aren't many of them. And they have to price these things, and they price them by taking into account that you will have to comply with the warranties, which is why here you can get a million dollars of coverage on a half-million-dollar yacht for a premium of about $9,000 a year. That's the policy in the record. Suppose this choice of law clause were modified and the phrase, the substantive laws of the State of New York were deleted and in its place was put, the substantive laws of some little country that has the most pro-insurer law you can possibly imagine. So any claim has to be submitted on very long form, and there are specifications about the font and the spacing of the letters, and the claim is to be rejected if there are any typos or any smudges on the claim form, and it has to be filed within 12 hours of the incident. And so the court is confronted with this choice of law issue. What would the court do? On the assumption that there's no other really good reason for sophisticated parties to pick that law, it's not going to be enforceable. Based on what principle? On the first of the two prongs in the restatement, you would say they didn't have any substantial connection to Andorran law or Mongolian law, what have you. Let's say that the insurer is located in this little country, so there's a connection. So if the insurer is located in that country, there's definitely a substantial connection to that law, and it's likely there's a reasonable basis for picking it, and it seems to me that we shouldn't be too worried about sort of unfairness, because you're talking about people who can't otherwise get insurance in the market. There are very few people that will write the insurance. They're on notice of the clause, and if we thought that were a problem from Bremen, then we have Carnival, saying on the forum selection side, it doesn't matter if it's a contract of adhesion. We have good rules for enforcing this across the board. Can I just ask you, because I was a little surprised about your reliance on the Bremen under the Wilburn Boat Standard. I understand that step one is that it has to be an established federal rule, but I also thought that the rule that you are asking be recognized as such in this context has never been laid down by this court in the choice of law context. The Bremen was forum selection. So can you just help me to understand how we know that there's an established federal rule in the choice of law world? Well, there wasn't an established rule laid down by this court pre-Bremen either, Justice Jackson, and what the court said in the Bremen was all of the purposes of maritime, the need for uniformity, predictability, facilitating the free flow of national and international commerce, all of those things lead us to say that forum selection clauses should be generally enforceable as a matter of federal law. So I think here you are right. There's no decision from this court on choice of law, but you have a uniform history in the lower courts. You have a virtual consensus among all the present-day courts, all the major maritime ones, and you already have Bremen and Carnival. So you already know what the rule is with respect to forum selection, and it does, I think, an even easier question here. Do you see no difference between forum selection and choice of law with respect to these issues? I do, but not in a way that helps raters. I mean, historically what courts were skeptical of was forum selection because they thought you picked the foreign forum and then forced the parties to go litigate there, which was effectively trying to deprive them of their ability to access the forum. But courts were not so hostile to parties picking choice of law. And so it seems to me that once you've done it with respect to forum selection, that was the harder question historically. But was it harder with respect to this issue of federal versus state? I mean, I would think that the forum selection scenario is easier when you're talking about picking among states than the question of federal to state, which is what is happening in this dynamic with respect to choice of law. I think I disagree with that. I don't see a difference for will and vote purposes. And if anything, it's less clear to me that the law on forum selection in Admiralty was well established as of the time of the Bremen, as it is that there's a well-established rule on choice of law now that existed both pre- and post-Bremen. So I think this is an easier case than the Bremen in both of those senses. And I do just want to say, Justice Jackson, I see the problems in the restatement acknowledges and so does the Bremen. If you pick out some really odd law that's just designed to mean they have no remedy, but here they picked out a standard law that gives them remedies, they still have two claims. They have traditional contract remedies, breach of contract, breach of the implied duty of good faith and fair dealing. The only thing they don't have are the more idiosyncratic Pennsylvania claims. But, again, it's not as if Great Lakes picked out some law in an effort to be unfair. Well, you can call it idiosyncratic, but what they really are is consumer protective as against insurance companies in situations of this kind. And we know that there's no federal substantive principle that conflicts with those Pennsylvania statutes. So the question is, as between two state laws, why we should necessarily allow the New York law to apply when everything about this case screams Pennsylvania. And I would have thought that what Wilburn both stands for, again, in its essence, is when that's so, it should be the state regulated insurance that gets to have its way. So I guess, Justice Kagan, what I'd say is if you picked up only Wilburn Boat, I could understand the other side's argument. If you picked up only Bremen and Carnival, I think we'd clearly be right. So then the question is, well, which distinction makes more sense, distinguishing between foreign selection and choice of law, or distinguishing between maritime insurance and other maritime contracts? And I think what the other side's position boils down to, and maybe I'm wrong, is that if you have a bill of lading, you're shipping goods from Europe to the United States, and you have a shipping contract, you have a towage into the port contract, you have employment contracts for the seamen, whether under Jones Act or otherwise, and you have a marine insurance contract, I think they're going to have to acknowledge all the foreign selection clauses in all the contracts generally enforceable except as against federal public policy. On the non-marine insurance contracts, I think they're going to have to say, still the same test is foreign selection, but for the one choice of law clause in the one marine insurance contract, you'd look at Wilburn Boat and say, ah, well, their state should play a role. That seems to me not a sensible result. And I guess I want to sort of broaden the lens. You started by saying this is a dispute between two state laws, and that is the way the other side sees it. But I think that ignores a third set of laws, federal law. And if we're right on the question that the court didn't grant, that there's a federal presumption of enforceability, then federal law does have something to say here. It says we want the clauses to be generally enforced except fill in the blank, and who gets to fill in the blank, the federal sovereign that recognizes the presumption? Well, the federal sovereign may get to fill in the blank and still say the presumption is overridden in a case where everything screams Pennsylvania, and Pennsylvania has substantive law in the area. Except that the federal sovereign, that wouldn't be a sensible thing for it to do, and that's never what the court has thought. The Bremen doesn't say a word about Florida law. Carnival doesn't say a word about Florida law. Bissell doesn't say a word about Florida law. None of these cases, London insurance came up out of Pennsylvania. Kensington came up out of SDNY. None of these cases looked at state law. They all, for, you know, dating 130-ish years, have looked at federal public policy because they've said the federal sovereign wants them enforced unless they're going to defeat the purposes of maritime jurisdiction, which is the whole system that this is designed to facilitate in the first place. The first step of the presumption and then the overcoming of the presumption, because I kind of take your answer to Justice Kagan to be, well, federal law wants them to be enforced, and so when you think about whether it's against federal public policy, you say, well, they want it to be enforced. Unless the chosen law deprives the parties of remedies altogether or forces them to go to a really far forum or adopts some limitations on liability that disserve the purposes of admiralty. So courts don't allow you to pick out a law if your chosen law says, you know, the shipper or the insurer can only be liable for $5 or you effectively have no claim at all. So if we deprive you of remedies or we put limitations in place that fail to deter negligence, federal courts say that triggers admiralty policy. But short of that, they're generally enforceable. So I'll be the first one to say most of these clauses are going to be enforceable because the standard clause, if you look across the cases, is this one. So if you look at Galilea, that's a different insurer. If you look at Clear Spring, the standard is entrenched federal admiralty law or failing that New York law. That's the standard clause. But it's possible, then, in Justice Alito's hypothetical, that federal public policy, you know, the itty-bitty country with the super harsh laws, you would concede that it's possible that federal public policy would be. Yes. Justice Thomas, anything further? Justice Alito? To what extent, if any, would a federal admiralty court exercising powers akin to a common law court be able to adopt a new rule along the lines of Pennsylvania law as a federal policy? Justice Alito, you mean with respect to something like bad faith or breaching the warranties or something like that? Yes. Well, yeah. Something that would cover a situation like this. A federal admiralty court could. The problem is if you look at the considerations that this court put forward in your opinion for the court in Dutra for how federal admiralty courts either recognize or make federal common law and admiralty, I think they're going to cut away from Pennsylvania because they cut in favor of enforcing the warranties, not in favor of sort of, you know, lax or lenient compliance. But if the history were different and if a court thought it served the purposes of admiralty, of course it could create a rule like that. But I want to be candid and say I think the history of admiralty and most decisions go the other way on that. But there's not a federal rule on the specific issue here. Like that's navigational limits, federal. As it's turned out, fire extinguishers, state. So, you know, I'm not fighting that that goes to state law. It's just a question of does the party's choice of New York law get to govern that question. Thank you. Justice Sotomayor. Why does Wilburn vote even apply here or to this question at all? I'm not sure it does. I'd be perfectly happy with an opinion that says it doesn't. But in fairness to Justice Kagan, if you just picked up Wilburn vote, it would tell you that if you don't have an established federal rule or you don't need to create one, you look to state law. And if you read the opinion, you'd think in marine insurance, the bar for that would be really high. So if you didn't have Bremen and Carnival, I think it would be a harder case, whether there be an on point rule here that you could look to. Well, we limited it in Cossack and Kirby. So, look, I agree. The court comes along six years after it in Cossack. It recognizes a federal rule on admiralty. It has some fairly critical things to say about Wilburn boat. It seems to side with the concurrence in the dissent and it seems to sort of question whether it's right. But I didn't you know, we're not biting off the whole burn holding of of of Wilburn boat. I mean, you know, I do think there are good reasons to be critical of the decision. I do think that it's historical discussion does not match up with the history in admiralty. And I think it was it was a little thin there. And Justice Frank for his concurrence has a lot to recommend it. But I don't sort of need to win that debate to prevail here. Well, I guess you need to win the debate that there is an established presumption of enforceability for conflict of law choices. Correct. Yes. That debate I need to win. And I guess what I would say is I have everything on my side except a decision from this court because I haven't. I have a sort of unbroken history in the lower courts. I have Bremen and Carnival and I have a near consensus in the federal courts on federal choice of law. So I have everything except this court confirming, yes, the rule for forum selection applies equally to choice of law, which, by the way, even the Third Circuit didn't dispute again on sort of narrowest grounds of decision. The Third Circuit got it right all the way up into the end where it said under the public policy prong, you look to state rather than federal. If you just said it's federal rather than state under the Bremen period, we're done. Justice Kagan. So if the plaintiff here were an airline company or a railroad or a trucking concern, probably the restatement rule applies. Probably Pennsylvania law applies because of it. Why is this so different? Well, it may. In some of those industries, I mean, you have the Federal Aviation Act. I mean, there are federal statutes in a lot of those. There is a federal act, I believe, that covers some interstate trucking. I mean, it's not that all of those are just sort of left to state law, but I do agree with you that outside of maritime, the restatement is going to run the traditional way because it's not a federal enclave and it will run as between the states. And I think, Justice Kagan, it's fundamental to our position that maritime is different and has long had a different set of rules. And this court has sort of confirmed again and again. And Wilburn Boat says, even Wilburn Boat says, well, but if there's a recognized federal rule or need to create one, no state law. And that's different about maritime from all of these other areas. So it seems to me, yes, admiralty is different. Justice Gorsuch. Justice Kavanaugh. On the federal exceptions again, if we agree with you that the exceptions are determined by federal law, and I think you said that it's just about the exceptions. Well, you don't necessarily need to be precise to win the case for your client, but we need to be precise in how we write the opinion. And so I want to ask two things. One, you don't think that as a matter of federal policy on exceptions, we should look to which state might have a materially greater interest than the chosen state in the determination of a particular issue, correct? No. Okay. And secondly, you've mentioned a couple of times if the chosen state will deprive the insured of remedies. And I didn't see that in the brief, but that might be something you're elaborating on a reasonable basis. Or where is that coming from? No, sorry. I thought we tried to say it in both of the briefs, but maybe not very clearly. It does not come up very often because, as I say, the standard choices entrenched admiralty law or New York law in the alternative. So these public policy arguments don't tend to play themselves out because nobody thinks that New York law is repugnant to federal law. But in the cases where it has come up where you've picked some, and there aren't many of them, what courts have tended to say is if you have limitations on liability that fail to deter negligence. So say in New York law, say it just chooses New York law. I just want to make sure I understand this. And New York law will keep going? New York law is not repugnant to federal policy because there is no evidence in this case or any other that it limits liability of marine insurers in a way that fails to deter negligence or otherwise deprives insurers of any remedy. Okay, any remedy. That's right. Not on the particular issue in dispute. Well, I mean, again, courts haven't had to confront it in a case where you had some remedies, but they didn't allow you to get at it. In all of these cases, because you have New York law, you have the standard contract remedies under New York law. They can claim that Great Lakes is breaching. They can claim that Great Lakes breached an implied duty of good faith and fair dealing. That's typically enough for them to be able to air these claims in court. So, I mean, again, they picked out New York law. I mean, this is not an idiosyncratic or weird law, so it doesn't tend to come up. But if you picked out a state's law that didn't allow you a remedy for your particular claim, it'd come up. I will say, Justice Kavanaugh, I've read more of these cases than I care to admit, and I haven't found a single case where that's true. Okay. Thank you. Justice Barrett. Justice Jackson. Thank you, counsel. Mr. Bashman. Mr. Chief Justice, and may it please the Court. In this maritime insurance case, the Court considers whether a state choice of law provision in an insurance policy is subject to the same fundamental public policy exception that applies everywhere outside of admiralty, or whether only a strong federal public policy will suffice to overcome the insurance company's state choice of law clause. The Third Circuit reached the correct result here for two reasons. First, under Wilburn Boat, state law applies. As a result, the fundamental public policy of the state, with the greatest connection to the dispute, can override the contractual choice of law provision, selecting the law of another state. And second, should this Court see a need to announce a federal common law rule to govern these circumstances, notwithstanding Wilburn Boat's decision to leave maritime insurance regulation to the states and to Congress, which has opted not to intervene, this Court should adopt Restatement Second Conflict of Laws, Section 187, as the federal rule. By contrast, the rule that Great Lakes urges is neither a judicially established federal maritime insurance rule, nor is it even a rule created for the circumstances of this case. Great Lakes' rule arose in the vertical choice of law scenario, involving whether parties to a non-insurance maritime contract could replace applicable substantive federal admiralty law with the state law they preferred instead. This case, on the other hand, involves a horizontal choice of law inquiry between the laws of two co-equal states. Both sides agree that substantive federal admiralty law does not preclude Rader's Pennsylvania law counterclaims. So why should federal public policy impact or restrict the choice of law analysis in any way? I welcome the Court's questions. Counsel, you seem to rely quite a bit on Wilburn, but we've had Cossack and Kirby since then, and you seem to shy away from those two cases that seem to suggest that we've cut back on Wilburn. I don't think that in the area involved in this case that I see any consensus in the lower federal courts that Wilburn Boat has, in fact, been cut back upon. So we believe that it fully applies to the circumstances of this case, which is, again, maritime insurance. And, in fact, by arguing that only federal policy can defeat a maritime insurance policy state choice of law clause, my friend on the other side is not merely seeking to evade Wilburn Boat, but to affirmatively use it to harm policyholders, exactly the opposite result of what that case was seeking to achieve. It's because of the Wilburn Boat decision to leave maritime insurance regulation to the states that neither this court nor other federal courts have been making federal policy relevant to the enforcement of maritime insurance terms and conditions. Using the absence of such federal maritime insurance policy against insurance policyholders, Great Lakes would leave such policyholders worse off than if Wilburn Boat ever even was decided on. The Wilburn was a little bit different. I mean, you had two states there. You had Texas and Oklahoma. It's a landlocked lake. And I think Justice Frankfurter pointed out the problem of taking a case about a houseboat on a lake too far and applying it to maritime shipping would be a problem. And it would seem that Cossack and Kirby reflect that concern. Well, again, my answer is that the core holding of Wilburn Boat, in my understanding of it, has remained good law. And I think certainly there was no issue in Wilburn Boat about whether there were a majority of justices that supported the majority opinion. There was. And so as much as some of your separate writings are no doubt incredibly erudite, I think everybody recognizes that where you have a majority opinion. But there are subsequent majority opinions in the Bremen and Carnival, which I think the other side highlights as important to the overall picture here. And since those cases, lower federal courts on choice of law have largely decided that you shouldn't have one being decided by federal, namely form selection, and choice of law being state law. So how do you respond to the idea that when you take Justice Thomas' question and broaden it out to the present day, you have a much more nuanced picture? Certainly, Justice Kavanaugh. To begin with, the Bremen and Carnival cases were not insurance cases. They do not state a judicially entrenched federal maritime insurance law. So it's my position to begin with that that's what you need, and that's what Wilburn Boat says that you need, and not some just otherwise applicable maritime law that applies outside of insurance. For example, if the first case that came before this court were to decide in the non-insurance context, when should a choice of law clause be enforceable or not, that, for purposes of Wilburn Boat, is not a holding that would necessarily be applicable in the insurance context. Wilburn Boat recognized, for lack of a better term, a sort of insurance exceptionalism where this court will defer to the states. Also, those two cases did not involve choice of law. The Bremen tangentially recognized that choice of forum might control choice of law, but as my friend on the other side has conceded, those are two different things. And if someone's going to ask me, you know, what's the difference between choice of law and choice of forum selection clause, I mean, I think that essentially it's self-evident. But in the insurance context, forum selection clauses are viewed as even more pernicious. There are numerous states that don't allow an insurance company to dictate. Doesn't that hurt your argument, then, though, that despite that, and I think you're right on that point, the Bremen said forum selection clauses are a federal law issue? It didn't say it was a federal law issue for purposes of insurance cases because it wasn't an insurance case. And so I think that when the insurance case arises. Well, why would that make a difference? Let's put the narrative out this way. Wilburn Boat's about substantive insurance provisions. Okay. Brennan Carvel about procedural issues, where a case is going to be litigated, how it's going to be litigated. You point out that the forum selection clause is a harsher one, and yet we don't look to state law there. Why? I guess maybe I'm repeating Justice Kavanaugh, but gosh, what's the point of distinction why we would maybe listen to forum selection clauses in all areas except for maritime insurance? Well, I think the point is that there is no established federal rule applying in the maritime insurance context to forum selection clauses so that the argument will be open. Fine. It's open. Why would we say that state law would control there? Because the need for states to protect insurance policyholders in the insurance context from sharp practices involving choice of forum clauses. Or one could say we have very sophisticated entities who are engaged in trade on the high seas. These are bespoke agreements. This isn't GEICO. And they make their choices. They live with them. This case does not involve a bespoke agreement. It also doesn't involve a houseboat in Oklahoma either. The other side keeps saying that we agreed to the choice of law provision, which I guess is technically accurate that we did not cancel the insurance policy after we received it. We're talking about a yacht floating around in the Bahamas. We're not talking about someone's motorhome or a floating houseboat. But if I could address the substantive procedure aspect of your Honor's question. I'm sorry. We got a little side swipe. But that is my concern. Why would it make a difference? If you lose in other procedural areas, in all other areas of law, why would you win in this one? This Court recognizes that choice of law is substantive to begin with. And then secondly, the issue presented in this case. Forum selection is procedural, but choice of law is substantive. Explain that to me. Which is why under the cases that we cite, it applies in diversity cases. The federal court follows the state choice of law procedure of the forum state in diversity cases. This Court ruled that the reason for that is because choice of law is substantive and outcome determinative. And so the other side says, I want to contrast this case with the case in which the Great Lakes insurance policy says, the insured cannot bring insurance bad faith claims. They cannot bring state unfair trade practices claims. Which is what they're saying the work that the New York choice of law provision accomplishes for them. Under Wilburn Boat, where you have substantive provisions, which is precisely what Wilburn Boat involved. You can't sell the boat. You can't use it for commercial purposes. This Court recognized that otherwise applicable law could override those substantive provisions. Why the outcome should be different was accomplished through a choice of law clause. The other side never really fully explained. Can I broaden it out? Just one quick question. I just want to give you a chance to explain the shift in argument. Because below, it seems that you did say that federal law, there was a presumption of enforceability to the choice of law clause. That's what I thought when we granted cert. And then I was confused when I started reading your brief and it was all about Wilburn Boat. I looked at the sites that the other side had in its reply brief for the proposition that we had admitted that choice of law is presumptively enforceable as a matter of federal law. And none of those established any such thing. Raiders third circuit briefs did not agree that a choice of law clause is presumptively enforceable as a matter of federal law. The term doesn't even appear in those briefs. Did you accept it as a premise, even if you didn't affirmatively make the argument these are presumptively enforceable under federal law? It seems to me that was the premise of the QP. It seems like that was the premise below. It was certainly the premise of the third circuit's decision. I push back firmly on the suggestion as the premise of the QP. The QP says, as a matter of, I don't have it at hand, but my recollection of it is whether state law is relevant to determining whether a state choice of law provision in a maritime. It says, can a choice of law clause in a maritime contract be rendered unenforceable if enforcement is contrary to the strong public policy of the state whose law is displaced? Sorry, I omitted the key phrase clause. Under federal admiralty law, can a choice of law clause? Right. They put a lot of weight on that introductory phrase that Your Honor omitted. And our answer is Wilburn Boat is a federal admiralty law case. Our argument under Wilburn Boat, step two. Well, I thought your argument was that Wilburn Boat, in fact, wasn't a federal admiralty case because I don't even take it. Well, I guess I should ask, do you accept Justice Kagan's premise that Wilburn Boat adopted state substance of law as a federal common law rule? Or is it your position that Wilburn Boat said this is a state law matter and federal law has nothing to say? I don't know that there's a whole lot of difference between those two positions. But what Wilburn Boat said, as I understand it, is that if you have a maritime insurance case, you undertake the inquiry that it requires. And if there's no judicially established federal maritime insurance rule and there's no desire to create one, then state law applies. And so, so much of the argument here today is, is there a judicially established federal maritime insurance law? Can I ask, can I broaden out the question I was asking, which is, can I broaden out the lens to look at what happened after Wilburn Boat, not necessarily this court, but in the industry? So my understanding is Wilburn Boat was something of a dislocating decision in the industry. And the response to it, picking up on Justice Reed's dissent and Justice Frankfurter's concurrence by the industry, was, OK, well, we'll use choice of law provisions because otherwise there'd be all this uncertainty created by Wilburn Boat. And choice of law provisions started to become commonplace.  And then choice of law provisions, particularly following the Bremen, became accepted as a matter of federal law by federal courts. And that this would be kind of Wilburn Boat redux if we go back now and say, oh, no, that whole experiment for the last couple generations of choice of law provisions is no good. Anyone respond to that? It's not that it's no good. We freely concede that in most every instance, a choice of law provision contained in a maritime insurance contract will be effective. This case is being fought over these narrow and difficult to satisfy exceptions. Well, OK, on that, the big exception is 2B, obviously, in the restatement, I think, which talks about weighing the different interests of the different states. And I understand the other side to say, no, that shouldn't be part of the inquiry at all. And you say, and I understand this position, that has to be a central part of the inquiry. That's not a narrow dispute. That's a big deal, I think, and certainly a big deal in your case. But I think it's going to be a big deal in some other cases. And why would we look at that? That's really designed for interstate disputes, not for maritime law. So why would we look at that provision of the restatement at all? Well, I hate to keep coming back to the Wolverine boat, but what it says is that in a maritime insurance dispute, if there's no established federal maritime insurance policy as a matter of judicially established, then you do look to state law. But here, I guess, isn't the question whether there is such a policy here? And I'm not clear on your position with respect to that. Justice Barrett sort of tried to ask it, so let me just put it out there. Is there a federal policy, in your view, related to the enforceability of these kinds of contracts, provisions? No, there is not. And it doesn't satisfy the stringent test that Wolverine boat recognized for... Did Wolverine boat recognize a test for determining when there is an established policy, or did it just... Yes. Oh, it did. Okay. So what is that test? At a minimum, it's that the showing in favor of allowing technical defaults by the policyholder to result in a forfeiture of coverage, which was a rather widespread body of law that existed at the time Wolverine boat came out, including earlier decisions of this court in the non-maritime insurance context that recognized that principle of law. That all of that was not enough. And what the other side points to here, we respectfully submit, is way less than the type of showing that Wolverine boat said wasn't enough. And the reason... I'm sorry, Counselor. You're, like, jumping the most important step. The issue is whether there's a presumption of enforceability of a conflict of law choice. Not about whether there's a presumption of enforceability of a particular term or substantive terms in a contract. But the simple question is, is there a presumption of enforceability in a choice of law provision? And you seem to say, because we, the Supreme Court, haven't said it, there can't be. But obviously Brennan put that to rest, because Brennan found one whether there had been one before or not. It announced that it preexisted itself. I'm still not sure you made that presumption below. The Third Circuit seemed to have made it. And I think that every lower court who's faced the question has presumed that there's that presumption. You haven't given me a reason why in admiralty law there wouldn't be that presumption. We want uniformity in maritime interpretation. We want people to be secure in knowing which laws are going to apply. Not what the substance of those laws are, but which law is going to apply. Everything that moved us to find that presumption in the form selection world seems to apply here. So now tell me why it shouldn't. Without getting to the unfairness of the substantive issues. Right. So Wilbur and Boat weighed many of those exact same concerns, including the issue with disuniformity. Because an insurance policy that contains certain substantive provisions might be enforceable in some states. But that had to do with the substantive. I'm not talking about that. I'm talking about the choice of law versus form selection. Well, this case involves a provision in the insurance policy that says it's a rather lengthy provision. But it says if there's no applicable federal admiralty law, then the law of New York will apply. And once you get to that stage, then you're in the state or state law world under Wilbur and Boat. And the other side is saying, well, only strong federal public policy can overcome that. And let me explain where that rule comes from. The case they cited the most in their cert petition and continue to rely upon in their merits briefing is a case from the Fifth Circuit called Stute. And that case, I suggest looking at it if you haven't already, is a non-maritime insurance case involving a dispute between the owner of an oil rig and the catering company on the oil rig. And they have a contract that decided to select Louisiana law on the issue of indemnification. Under regular federal maritime law, an indemnification provision in a contract would be enforceable. But under Louisiana law, what's called, I believe, the anti-indemnification oil field statute of Louisiana, you cannot enforce an indemnification provision in a case governed by that Louisiana law. And so the issue before the Fifth Circuit and Stute was could the parties replace substantive federal administrative law allowing an indemnification claim with the law of Louisiana disallowing an indemnification claim. And the Fifth Circuit said, we have to look at federal public policy to decide whether we'll allow state law to displace federal law. I know it's a strange scenario because in many situations, federal law necessarily is deemed to be controlling in the absence, even if there is conflicting state law. But the Fifth Circuit said, there's not a strong federal policy. So we'll allow the parties to choose the law. And they rejected. And just thinking about Justice Sotomayor's question, I take it that you should have no great quarrel with the idea of a federal rule that there's a presumption of enforceability. Your point is just, well, at the next step, the question is what overrides the federal presumption of enforceability? And your view is that what overrides it, a la the restatement rule, is when there's a particular state law where a state has a vastly superior interest in a dispute. And there is a state substantive law which federal law does not at all conflict with. I agree that that view resolves the case in our favor for sure. I also understand the other side to be arguing, on the other hand, if you have a federal presumption, then maybe only federal policy reasons ought to be relevant to that. And I think that if you look at their sites that say that somehow we've conceded that away, those sites don't establish that. What's your answer to that question? I mean, why would it be the case that we would be in a world in which state interests or state policy could override the federal presumption of enforceability? Because this case arises at the last step of Wilburn Boat where state law controls, which is how they got a new... No, no, I'm just talking about it as a matter of theory. So setting aside what Wilburn Boat, I'm just trying to understand. One reason why it would be that the federal exception, you'd have to have federal interest in the exception is a couple. One is that we have a general rule and we have an exception. And unless you actually have sort of the same dynamic working, you could easily see how the exception could swallow the rule. You'd never have the rule, right, because the exception is sort of being established on a different plane. So that's one thing. Another thing is to the extent we're talking about federal interests overarching this entire dynamic, we know, as Justice Sotomayor says, the federal interests are in uniformity and predictability and all of those sorts of things. So if we have a single federal spokesperson regarding what is accepted, you're more likely to advance the interest of uniformity and predictability. Whereas if you have state interest operating in the exception, you're going to have all of these different exceptions popping up at different times and people aren't going to know what they're doing. So I appreciate that there's a world in which insurance contracts are different and they're ordinarily run by the states and each state has a particular interest, consumer protection, not, or whatever. But if our entire kind of framing is about ensuring predictability and uniformity, why would we have a world in which we would allow different state policy interests to be driving the exception in this way? Well, I have multiple points to make in response to that. Sorry, that was a long question. First of all, Wilburn Boat weighed the federal interest in uniformity and said that in the maritime insurance area it did not outweigh state regulation, which is obviously what this case involves, as was alluded to when my friend was up here. Secondly, the type of uniformity that the Great Lakes argues in favor of is not the sort of uniformity that this court ordinarily speaks of in the general maritime law context, where it's essentially a substantive rule. So as was alluded to earlier under the Dutchford Group case, you can't get punitive damages on an unseaworthiness claim. This case still allows any maritime insurer to pick whatever choice of state law to apply in the absence of federal law. And again, in no other area of the law is there a choice of law principle that says, yes, state law controls, but the only thing relevant in deciding whether the court should enforce that or not is federal law. This court, when it decides admiralty cases, takes a look at the law that exists outside, out in the real world, and tries to figure out what is a sensible rule of law to apply in this case. And what I'm telling you is the rule of law that the other side is seeking is something that, in the choice of law area, you just don't see anywhere. And I think that's one of the reasons why the two leading choice of law law professors, even though they filed an amicus brief at the same time as the other side's amicus brief in support of neither party, came out essentially the same way that we're urging here. They did that, the Coyle and Roosevelt brief, they did that as a matter of federal common law. So they rejected your premises that, and they concluded, assuming there's a federal presumption of enforceability and that the exceptions are determined by federal common law, they disagree with you on that. But then I want to ask you about that. Then they adopt, they say we should adopt the restatement as the federal exceptions. And the second one of the restatement, the second provision, talks about the competing state interests in the matter. And the other side says don't do that because that restatement provision was designed for interstate disputes, and this is maritime. To me, if we get to this, this will be really important what we say about this. So I want to give you a chance to respond to that. Right, I think that the reason that the law professors are correct that that restatement section should be applied here, which of course is an argument that we also put forth in our brief. Yeah, I agree with you. It was a backup, backup argument there. Right. Is that this case arises in the setting of a conflict between the law of two states, and that's what I referred to earlier as the horizontal choice of law conflict. The other side is trying to turn it into a vertical choice of law conflict. But if there was some federal policy that mattered, we don't dispute that that federal policy would control. That's what Wilburn Boat says. But, again, the other side is trying to pick these cases that arose outside of the maritime insurance context that say that ordinarily we will enforce a choice of law provision. Again, a showing of a snattering of federal appellate court decisions that Wilburn Boat says is not enough to judicially establish it to begin with. And they say let's use that as the main federal rule, and let's apply it to insurance cases too. Again, if Wilburn Boat were so easy to evade, it might make you wonder what's the point of even having it. But, of course, the other side did not make that their issue. Mr. Beschman, can I just clarify one thing about your answer to Justice Kavanaugh? When you say, and you said this in your brief too, that if federal policy cared about it, if federal law cared about it, we would have a rule, are you talking about, and I won't even try to say the Latin name, the utmost good faith issue, or are you talking about the choice of law issue? Because it kind of sounded to me in your brief and today that you're talking about the utmost good faith issue, which is different. So this case, we've been arguing this case for quite a little bit now. This case involves whether my client can maintain certain counterclaims under Pennsylvania law, and so those are Pennsylvania law statutory counterclaims. Well, let me just say it differently. I understood the utmost good faith to bear on whether you could maintain those claims. But putting that aside, I guess what I'm saying is what federal policy are you talking about when you say federal law doesn't care? Are you talking about the substance of your claims, your counterclaims, or are you talking about the choice of law? I guess to answer that directly, what the other side's position is, is that there's generally no federal policy that would support overcoming a choice of law provision in the maritime insurance context. And, again, I'd lay that at the feet of Wilburn Boat, which said we're not going to create federal policy. So I don't want to derail you totally from Justice Kavanaugh. So your answer to me is that you are talking about federal law not caring, not having any federal policy with respect to choice of law. Correct. Thank you, Justice Thomas. Anything further? Just a short question, Mr. Bashman, to satisfy my curiosity. Were they able to salvage those twin 12B71s? It's a little bit outside of the record that's in front of this court, but I think that what happened was the boat was taking on water and may have been run aground to avoid sinking it so that it could be salvaged more easily. And the boat is repaired now and is back in working order. Justice Alito? Justice O'Meara? Justice Kagan? Justice Kavanaugh? Just one thing. When you say federal maritime law doesn't care or federal law doesn't care about the choice of law, I think federal maritime law, as reflected in decisions of this court, does care about predictability and certainty. And if that's true, then that doesn't defeat your argument on this point, but I think it's in tension with your argument that as a matter of federal common law, we should weigh each state's competing interests in the matter. Again, I think that you understand our position on that point, which is that the other side's approach does not dictate the type of uniformity that this court's decisions talk about. I'm going to end it real quick, but uniformity is different from predictability and certainty. I think that's important to keep in mind. Right. I'm saying that uniformity is different than predictability and certainty, and that, again, Wilburn Boats weighed those concerns. Thank you. Justice Barrett? Justice Jackson? Isn't the argument that we should adopt the restatement as the federal common law, isn't that in tension with the point that you're just making that the federal law really doesn't care about the choice of law? In other words, I thought your point was that federal law is sort of agnostic about whether it's New York law that applies or Pennsylvania law that applies, right? That's the sort of original starting point, which is why we go in the contract to New York, because that's their opening paragraph. If federal law doesn't care about this, then you make it New York. But then we have federal law caring about the fact that you've made that contractual provision and saying you have to enforce unless, et cetera, et cetera. So why isn't that the federal policy that is sort of driving this? So to answer the first part of your question, we have the adoption of the restatement as our fallback argument under what I'll refer to as step two of Wilburn Boat, which is if this court sees a need to announce a uniform federal rule. Wilburn Boat made clear that ordinarily that would not be done, but rather that it should be left to Congress. And I can't say it enough. Congress is across the street and has plenary power to overturn Wilburn Boat. And 70 years have gone by and it has chosen not to do so. Thank you, counsel. Rebuttal, Mr. Wall? Just a handful of points, Justice Thomas, to your central question. The boat is available for sale online if you have a half million dollars. And as best I can tell from the pictures, the engines were salvaged. So don't worry. Justice Barrett, at page 12 of the op, they recite the well-established maritime principle that these choice of law clauses are generally valid unless unreasonable or unjust. And then it's all a debate at the cert stage, as it was in the lower courts, about when the general validity or presumption can be overcome. The presumption was never at issue in the case. I think we can go back and forth on the quotes from the brief. I feel good about them, but I think reading the briefs in context, that was never at issue in the case. And the court did not grant the broader first QP in the petition. It only granted the narrower second QP on how to work the exception. If the court agrees that there is a presumption, set aside, Justice Kagan, Brimmon and Wilburn, and if you were just asking, well, how would it work? If you had no choice of law clause in the contract, you'd apply federal choice of law rules. That's this court's decision in Lauritzen. All federal. It's not diversity. It's not Claxton. You don't look to state law. There's a federal choice of law test in Admiralty. All right. We put the choice of law clause in the contract. We have a presumption. Well, it wouldn't be much of a presumption if federal law goes, if 50 states could just set it aside. That's Justice Jackson's point. And even looking at the facts of this case seems to have a fairly international flavor. You have a German insurer. You have an insured in Pennsylvania that designates an agent in the contract in Florida. And the boat can travel up and down the eastern seaboard in the Bahamas nowhere else. That's the navigational limit. That sure triggers some interest of Pennsylvania, but it doesn't seem like the only state in play. And more importantly, it seems like the sort of national and international thing that triggers the broader purposes of maritime. But even if you didn't buy all of that, we do have the Bremen. The best reading of the Bremen is that public policy is federal public policy, not state public policy. Mr. Bashman agrees the foreign selection clauses are even more pernicious. If that's right, then having adopted the rule with respect to the Bremen, it seems to be easier on the choice of law side to say you should have exactly the same rule. Then the move is, but it's an insurance case. But we don't do that for foreign selection clauses. We don't have the Bremen test for all maritime contracts that aren't marine insurance. Every bill of leading, every towage contract, every employment contract. We have the Bremen test across the board. So why would we distinguish on the choice of law side and have the Bremen test for non-insurance maritime contracts, but the Bremen looking to state policy for marine insurance contracts? I think all of that should make the court skeptical of Wilburn boat. But even if you don't approach it through the lens of Cossack and Kirby and Dutra, you could simply say we cleared the high bar in Wilburn boat in Bremen. And for exactly the same reasons, we clear it again here because there is a tradeoff in this contract. It has a forum selection clause that is a favorable forum for the plaintiffs to get to sue in Pennsylvania. It picks out a neutral law. A German company picked the U.S. state to which it had the most ties, where it has its American trust accounts, where it's designated as a surplus lines insurer, and where it has its agent for service of process. It picked a stable, well-developed body of both commercial and maritime law, the state where it has the most substantial connections, which ex-ante we should not think would be unfair to the policyholder at all. Why not treat those clauses as a package? They should be generally enforceable as a matter of federal law unless they offend federal public policy. They don't here, Justice Kavanaugh. There's no argument that they do. So although I tried to articulate the limits earlier, I don't think the court needs to get into them or to catalog them here. All you have to say is that for the same reasons as the Bremen, it serves federal interests in maritime. It gives you uniformity so that you know that your clause will be enforced without having to try to figure out 50 states' laws. It allows the insurer to price in a predictable way, which lowers the premium for the insurer. That's not just speculation. You look at the policy here. It's a pretty reasonable premium for what is a pretty substantial policy, but it comes with limits, limits they agreed to when they were renewing the policy back in 2016, including the fire extinguisher, and it gives an administrable test for courts. All of this, as the Bremen said, accords with ancient principles of freedom of contract. It's the right answer in federal admiralty. Thank you, counsel. The case is submitted.